**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LEONEL ANTONIO ORDONEZ LUNA, and
JUAN FERNANDO PINEDA JIMINEZ,

                       Petitioners,

v.

MICHAEL BALL, In his official capacity as
Acting Deputy Field Office Director, Buffalo
Field Office, U.S. Immigration & Customs
Enforcement; DAVID VENTURELLA, In his
official capacity as Acting Director, U.S.
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity
as Acting Secretary of Homeland Security; and
TODD BLANCHE, In his official capacity as U.S.
Attorney General,

                       Respondents.

9:26-cv-1227
(ECC)

---

Matthew Borowski, Esq., *for Petitioners*
Alexis M. Osborne, Assistant United States Attorney, *for Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Petitioners Leonel Antonio Ordonez Luna (Ordonez) and Juan Fernando Pineda Jimenez

(Pineda), both citizens of Nicaragua, allege that they separately entered the United States without

inspection, were initially detained by Respondents, and were subsequently released from

Immigration and Customs Enforcement (ICE) detention in 2020 and 2022, respectively. Dkt. No.

1. On June 13, 2026, Petitioners were taken into custody by ICE near Syracuse, New York. *Id.*.

That day, Petitioners filed a habeas petition pursuant to 28 U.S.C. § 2241, asserting that their arrest

and detention violates the due process clause of the Fifth Amendment as well as the Immigration

and Nationality Act (INA).  The petition is fully briefed, Dkt. Nos. 7, 8, 9, 11, and a hearing was held on July 8, 2026.

For the following reasons, the petition is granted in part as to Ordonez's request for habeas relief pursuant to 28 U.S.C. § 2241, and denied as to Pineda's request for habeas relief pursuant to 28 U.S.C. § 2241.

## II.    BACKGROUND[1]

### A.    Ordonez

Ordonez entered the United States on March 2, 2020 without inspection near Del Rio, Texas, and was immediately detained.  Dkt. No. 1 ¶ 4; *see also* Dkt. No. 8-1 at 2.  He "went through the credible fear process, was determined to have a credible fear of return to Nicaragua due to persecution," and was placed in removal proceedings under the INA.  Dkt. No. 1 ¶ 5; *see also* Dkt. Nos. 8-3; 8-15.  In April 2020, Ordonez was granted parole upon posting a $3,000 bond, and released from detention.  *Id.* at ¶ 5; *see also* Dkt. No. 8-15.  Ordonez has resided in the United States continuously since March 2020, and attended all of his immigration court appearances as he awaits final adjudication of his case.  *Id.* at ¶ 6.  He has two children who are citizens of the United States, owns a roofing company in Oswego, New York, and "has an employment authorization document."  Dkt. No. 7 at 2.

On March 20, 2025, Ordonez was convicted of Aggravated Unlicensed Operation of a Vehicle, a New York Vehicle and Traffic offense, and Disorderly Conduct, a violation under the New York Penal Law.  Dkt. No. 7 at 1-2, *see also* Dkt. Nos. 8-4; 8-8 at 3.  On June 5, 2025, he was convicted of Misapplication of Property, a misdemeanor under the New York Penal Law.  *Id.*

---

[1] The facts are not disputed unless otherwise noted.

Ordonez attended a scheduled immigration court appearance on September 11, 2025, at which time counsel submitted his criminal disposition documents to the immigration judge. Dkt. No. 11 at 1. "The [immigration judge] and DHS mentioned at the hearing that [Ordonez's] criminal history is not a bar to relief but can be used in a discretionary analysis. No further discussion was had." *Id.* The hearing otherwise lasted for approximately one hour, and Ordonez's immigration case was continued to 2026. *Id.*

### B.    Pineda

Pineda entered the United States on July 15, 2022 without inspection near Yuma, Arizona and was immediately detained. Dkt. No. 1 ¶ 8, *see id.* at 3. He was ultimately released from custody on his own recognizance once removal proceedings were initiated against him. Dkt. No. 1 ¶ 8; *see also* Dkt. Nos. 8-5; 8-6. Pineda has resided continuously in the United States since July 2022. *Id.* at ¶ 9.

The petition alleges that Pineda has attended all of his immigration court appearances as he awaits final adjudication of his case. Dkt. No. 1 ¶ 9. However, in response to the petition Respondents submitted evidence that Pineda failed to report for an immigration check-in appointment on April 2, 2026. Dkt. No. 8-14 at 2. In reply, Pineda does not deny that he failed to report for the check-in appointment in April 2026, but denies "knowledge of the veracity of the statements surrounding this event," and argues that Respondents have provided "no support for why . . . [Pineda's] purported failure to appear for his check in appointment in April gave rise to him being a flight risk, nor did they specifically demonstrate that he was questioned about that purported failure to appear . . . and given an opportunity to explain it." Dkt. No. 9 at 2-3.

### C.    The Arrest

Petitioners allege that on the morning of June 13, 2026 they were re-detained by Respondents after a traffic stop "premised on racial profiling," that was "not targeted specifically against Petitioners." Dkt. No. 1 ¶¶ 10-11. Petitioners further allege that "[u]pon information and belief, no warrant for the arrest of Petitioners was issued prior to their arrest," and "no final custody determination had been made before or contemporaneously with the arrest." *Id.* at ¶¶ 12-13. Petitioners state that they were not provided "any meaningful opportunity to be heard" before their arrest, nor was there a pre-deprivation determination by a neutral decisionmaker that Petitioners were a danger or flight risk. *Id.* at ¶¶ 16, 19.

According to the Respondents, on June 13, 2026 ICE officers encountered Petitioners during a targeted enforcement operation in Fulton, New York. Dkt. Nos. 8-7 at 1-3; 8-8 at 1-4. Petitioners were observed exiting a residence and entering a vehicle, at which time the officers initiated a vehicle stop. *Id.* During the stop both Petitioners confirmed their Nicaraguan citizenship. *Id.* Pineda was advised of his violation of the conditions of his release requiring he report to his scheduled check-in appointments. Dkt. No. 8-7 at 2. Petitioners were taken into ICE custody pursuant to immigration arrest warrants. Dkt. Nos. 8-9; 8-10. That day, an I-286 Notice of Custody Determination pursuant to INA § 236, 8 U.S.C. § 1226 was executed for each Petitioner, advising them of their right to request a bond hearing before an immigration judge. Dkt. Nos. 8-11; 8-12. The Petitioners declined to make an election and refused to sign the acknowledgements. *Id.*

## III.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United

4

States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to 'discretionary judgment,' 'action,' or 'decision' by the Attorney General with respect to either detention or removal." *Mahmodi v. Marich*, No. 25-cv-6762, 2026 WL 113473, at *2 (W.D.N.Y. Jan. 15, 2026) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (other citations omitted)).

## IV.    DISCUSSION

At the July 8 hearing, counsel for the parties conceded for purposes of this action that 8 U.S.C. §1226(a) governs the Petitioners' detention, and the only remaining issue is whether Petitioners were afforded sufficient process under the Fifth Amendment in conjunction with their June 2026 re-detention. Petitioners contend that they possessed a protected interest in their continued liberty after the determination, made contemporaneous with their entry into the United States years ago, that they did not pose a danger to the community or flight risk. Dkt. No. 7 at 2-5. Thus, Petitioners argue, "due process require[d] the government to bear the burden of proving by clear and convincing evidence that Petitioners are a flight risk or danger to the community" before they could be re-detained. *Id.* Petitioners suggest that such process should come in the form of a "pre-deprivation hearing." *Id.* at 1-2. Respondents contend that it is settled circuit law that due process does not require a pre-arrest individualized custody hearing in this context, and that § 1226(a) vests "broad discretionary authority in DHS to arrest and detain noncitizens pending removal proceedings, subject to post-arrest review procedures." Dkt. No. 8 at 3.

As an initial matter, courts in this circuit have consistently held that even under circumstances where a noncitizen has been previously released from custody, due process does not require "notice or opportunity to contest detention *prior* to" his or her re-detention. *Sterling v.*

*Bondi*, No. 3:25-cv-2122, 2026 WL 1746537, at \*7 (D. Conn. June 17, 2026) (quoting *Vizhco Chunchi v. Francis*, No. 25-cv-10249, 2026 WL 249676, at \*2 (S.D.N.Y. Jan. 30, 2026)); *see also O.F.C. v. Almodovar, et al.,* No. 25-cv-9816, 2026 WL 74262, at \*6–8 (S.D.N.Y. Jan. 9, 2026) (holding that neither § 1226(a) nor due process requires pre-detention notice or hearing for a petitioner detained pursuant to § 1226(a)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) (holding that the court does not require a "hearing-like process" before Department of Homeland Security may exercise its discretion to detain a noncitizen under § 1226(a)).  These decisions are consistent with the text of § 1226 and its supporting regulations, which provide DHS with wide latitude in exercising its discretion.  Specifically, § 1226(b) provides that the "[Secretary] at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). The regulations further provide that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [certain immigration officers], in which event the alien may be taken into physical custody and detained."  8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

Nevertheless, "[w]hile the Government undoubtedly has authority to detain [noncitizens] under Section 1226," a noncitizen remains "entitled to adequate procedural protections before being deprived of [their] liberty." *Mcdonald v. Francis*, No. 25-cv-9355, 2025 WL 3295906, at \*4 (S.D.N.Y. Nov. 26, 2025) (internal quotation marks omitted).  In the Second Circuit, the "*Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at \*2 (S.D.N.Y. July 13, 2025) (citing *Valdez*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025)). "The determination of what procedures are required under the Fifth Amendment

6

requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335).

For the reasons explained below, the Court finds that Ordonez's detention violates due process, and thus orders his immediate release. Furthermore, and for the additional reasons set forth below, Pineda is not entitled to such relief as his detention does not violate due process.

### A.    Private Interest

"[T]he Second Circuit has explained that the private interest at stake here 'is the most significant liberty interest there is—the interest in being free from imprisonment.'" *O.F.C.*, 2026 WL 74262, at *9 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty.") (internal quotation marks omitted). "Courts have held that the first *Mathews* factor cuts in favor of petitioners who were released from ICE detention subject to conditions and the threat of re-detention." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *5 (S.D.N.Y. Nov. 25, 2025) (collecting cases).

Courts have further recognized that a noncitizen's liberty interest may be undermined or heightened based on specific factors. For example, a Petitioner's "multiple encounters with law enforcement" after his release on bond may undercut his interest and/or expectation in remaining free. *Sterling*, 2026 WL 1746537, at *6; *see id.* ("[W]hile Petitioner's initial release from ICE custody may have constituted an "implicit promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release, Petitioner's interest in or expectation of

remaining free on bond is surely undermined by his repeated encounters with law enforcement."); *but see O.F.C.*, 2026 WL 74262, at \*9 (finding that Petitioner's "liberty interest remains fundamental notwithstanding [his] conviction for a state crime," and explaining, where petitioners were detained because they had been convicted of serious crimes, the Second Circuit "observed that although the petitioners' detention was in some sense the result of a criminal adjudication, they had served [their] entire sentence[s].") (internal quotations and ellipses omitted).  On the other hand, factors such as conditions of confinement, the length of a Petitioner's detention, and familial and community ties have been found to heighten the private liberty interest at stake.  *See, e.g., Rashid v. Trump*, 807 F. Supp. 3d 349, 365 (D. Vt. 2025) (explaining that "[an] individual's liberty interest increases over time"); *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 290 (S.D.N.Y. 2025) (recognizing that "the conditions of J.M.P.'s detention heighten his interest in freedom from confinement."); *O.F.C.*, 2026 WL 74262, at \*10 ("These interests come into full relief when considering Petitioner's and his family's specific circumstances.").

Here, the Court finds that this factor weighs in favor of both Petitioners.  With respect to Ordonez, notwithstanding his relatively minor, but real, criminal conduct while released on bond, the record reflects that he has significant family obligations, is the sole provider for his children and disabled wife, and owns a roofing company in upstate New York.  Thus, on balance, this factor ultimately weighs in Ordonez's favor.  Although there is little information in the record concerning Pineda's familial or community circumstances, or the nature of his present confinement, the Court will assume for purposes of this analysis that this factor weighs in Pineda's favor as well, considering his prior release from detention.

8

### B. Risk of Erroneous Deprivation

At the second stage of the *Mathews* test, the Court must consider "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government." *Black v. Decker*, 103 F.4th at 133, 152 (2d Cir. 2024).

"A person's liberty cannot be abridged without 'adequate procedural protections.'" *Lopez Benitez*, 795 F. Supp. 3d at 492–93 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). As previously set forth, the INA undoubtedly vests broad authority to arrest and detain noncitizens, "but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021) (emphasis in original). "And before the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.'" *Lopez Benitez,* 795 F. Supp. 3d at 492-93 (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020)); *see also O.F.C.,* 2026 WL 74262, at *7 ("To be sure, although Section 1226(b) does not itself require a pre-deprivation hearing, it does still require some process—namely, that there be an individualized determination regarding the noncitizen's dangerousness or risk of flight."); *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 392 (S.D.N.Y. 2026) ("The risk of erroneous deprivation of a noncitizen's liberty interest is 'high' where the Government cannot 'articulate[ ] any change in circumstances between the time of the [noncitizen's] initial release and his re-detention that now makes him a flight risk.'") (citation

9

omitted); *Luna Sanchez v. Bondi*, No. 25-cv-18888, 2025 WL 3191922, at *5 (E.D. Va. Nov. 14, 2025) ("[t]here is a substantial likelihood that, by allowing DHS to arbitrarily revoke Petitioner's bond and detain him without any individualized findings, Petitioner will be erroneously deprived of liberty."). "That conclusion follows from the text of § 1226(a), which provides that the Attorney General 'may continue to detain' an arrested noncitizen, as the Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Id.* (cleaned up).

Because this factor cuts differently as to Ordonez and Pineda, the Court addresses each in turn.

### 1. Ordonez

Respondents presented no argument or evidence in their response to the petition that a decision to re-detain Ordonez was based on an individualized determination regarding his dangerousness or risk of flight. Instead, the Respondents maintained that "the availability of prompt post-deprivation review before an Immigration Judge satisfies due process in the § 1226(a) context." Dkt. No. 8 at 4. However, at the July 8 hearing Respondents agreed that the appropriate inquiry is whether an individualized determination to revoke Petitioners' release was made, as opposed to an arbitrary revocation. Respondents maintain that the fact of Ordonez's convictions while he was free on bond establishes a change in circumstances forming the basis to revoke Petitioner's release.

Under the specific circumstances of Ordonez's case, Respondents' argument falls short. Even assuming that Ordonez's convictions *could* form the basis for an individualized determination to revoke his release, there is nothing in the record before this Court to suggest that Ordonez's convictions *were* the basis for an individualized determination to re-detain him based

on dangerousness or flight risk.  In fact, the record suggests the opposite.  Months after Ordonez's convictions, he appeared in immigration court for a regularly scheduled appearance with counsel. The fact of Ordonez's convictions was explicitly disclosed and discussed with the immigration judge, who opined that the convictions could affect Ordonez's ultimate removal determination. Ordonez's custody status was not altered by the immigration judge, and he left the hearing maintaining his status of release on bond.  Otherwise, there is nothing in the record to reflect who made the decision to detain Ordonez more than nine months later, or on what basis, i.e., change in circumstances, this decision was made.  In the absence of anything to suggest that DHS exercised any discretion in detaining Ordonez, other than counsel's post-hoc explanation, the Court concludes that Ordonez's liberty was at risk of erroneous deprivation, and the second *Mathews* factor therefore weighs in Petitioner's favor.  *See Khabazha*, 2025 WL 3281514, at \*6 ("When the government seeks to curtail a person's liberty, [t]he law requires a change in relevant facts, not just a change in attitude. The decision must also be reasonably explained.") (internal citations and quotation marks omitted); *Sidqui*, 823 F. Supp. at 393 ("The fact that Petitioner was arrested over eight months after allegedly failing to comply with the terms of his ATD Program, over seven months after he was initially arrested by the New York Police Department, and four months after the criminal charges from that arrest were dismissed—despite the Government's conceded knowledge of both the alleged failure to comply with the ATD Program and the criminal charges— highlights the risk of erroneous deprivation."); *see id.* at 391 ("The Court cannot credit Respondents' new position as to the basis for [Petitioner'] detention, which was adopted *post hoc* and raised for the first time in this litigation.") (citation and quotations omitted); *Cf. O.F.C*, 2026 WL 74262, at \*14 (S.D.N.Y. Jan. 9, 2026) (finding a sufficient showing of individualized determination based on petitioner's arrest and conviction while he was free on bond, given that

11

"ICE lodged an immigration detainer for Petitioner while he was incarcerated for his state conviction," and the detainer "could reasonably be understood as some evidence of an updated assessment regarding Petitioner's dangerousness following his new criminal conviction.").

### 2. Pineda

At the July 8 hearing, Respondents argued that Pineda's failure to appear for a check-in appointment with immigration court in April 2026 formed the basis for an individualized determination that his release should be revoked.  Unlike Ordonez's case, there is evidence in the record supporting the Respondents' argument in this regard.  First, Respondents submitted a document regarding Pineda's immigration case which, according to representations at the hearing, were notes kept by DHS counsel and immigration officers that are not part of the A file.  That document reflects that Pineda last reported as directed in August 2025, at which time he verified his address and was scheduled to return to court the following year.  Dkt. No. 8-14 at 2.  The next "event" is dated April 2, 2026, and indicates that a "Non Detained Single appointment" was "marked as missed."  *Id.*  On June 13, 2026, Jiminez was arrested as described above.  *Id.* According to the Form I-213 prepared in conjunction with Pineda's arrest, Pineda was "placed under arrest and taken into ICE custody without incident.  Officers advised [Pineda] that he was being placed under arrest due to the violation of conditions of his Order of Recognizance with reporting to the Immigration office in Syracuse, New York."  Dkt. No. 8-7 at 2.

On this record, the Court finds that Pineda has failed to meet his burden of proving the risk of an erroneous deprivation of his liberty interest by a preponderance of the evidence.  Respondents have put forth argument and evidence of an individualized determination made by DHS to re-detain Pineda based on his failure to appear at his immigration appointment.  To the extent that a failure to appear at a single immigration appointment may be a basis to find risk of flight, *see*

12

*G.F.F. v. Francis*, No. 25-cv-7368, 2026 WL 924072, at *3 (S.D.N.Y. Apr. 4, 2026) (concluding that the immigration judge "correctly found that the Government proved by clear and convincing evidence that [petitioner] is a risk of flight upon his strong incentive to flee combined with his past failures to appear at various immigration appointments as well as his failure to comply with the requirements of the ATD program"), this Court "does not have the authority to second-guess the Government's individualized determination—only to ensure that it was made in the first instance," *O.F.C.*, 2026 WL 74262 at *7; *see also Sidqui*, 823 F. Supp. 3d at 391 (distinguishing respondents' failure to offer any explanation for petitioners' re-detention from a court determination that the respondents' proffered basis in its decision to detain petitioner is "substantively inadequate in some respect," and recognizing that "DHS has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court."). For these reasons, the second *Mathews* factor weighs in favor of the Respondents as to Pineda.

### 3. The Government's Interest

The third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Government's "interests in detaining noncitizens under § 1226(a) [are] (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes." *Velasco Lopez*, 978 F.3d at 854; *see also Valdez*, 803 F.Supp.3d at 218 ("The Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'") (quoting *Zadvydas*, 533 U.S. at 690). "However, the Government has little interest in detaining a noncitizen who was previously determined to be neither a flight risk nor dangerous, . . .without an individualized determination of risk of flight and dangerousness." *Sidqui*, 823 F. Supp. 3d at 394; *see also Sterling*, 2026 WL 1746537, at *8 ("Put

13

differently, insofar as noncitizens released on bond have been determined to be neither a flight risk nor dangerous, the Government's interest in re-detaining them is minimal, absent demonstrable changed circumstances and an individualized reassessment as to the noncitizens' flight risk and dangerousness.").

Here, with respect to Ordonez, there is nothing in the record demonstrating an individualized determination of change of circumstances demonstrating that he is a flight risk or danger to the community.  Respondents have therefore failed to show a significant interest in Ordonez's continued detention, and the third *Mathews* factor weighs in favor of Ordonez. In contrast, because Pineda has failed to overcome the record evidence establishing that his recent failure to appear for a check-in appointment was the basis for his arrest and re-detention, Respondents have established, for purposes of this petition, a legitimate interest justifying Pineda's re-detention based on a change in circumstances, for purposes of the third *Mathews* factor.

In sum, with respect to Ordonez, given his significant liberty interest, the risk of erroneous deprivation, and Respondents' failure to show a significant governmental interest in Ordonez's re-detention, the continued restriction of Ordonez's liberty violates his due process rights.  In contrast, with respect to Pineda, notwithstanding the substantial liberty interest at stake, Pineda has failed to demonstrate that he was re-detained without any exercise of discretion, and that diminishes the risk that his continued detention represents an erroneous deprivation of his liberty.  Furthermore, Respondents have demonstrated, for purposes of this petition, their interest in Pineda's continued detention as it pertains to ensuring noncitizens appear for and participate in their immigration proceedings.  Accordingly, the Court concludes that Pineda's due process rights were not violated when he was arrested and detained on June 13, 2026.

14

## V.    APPROPRIATE RELIEF AS TO ORDONEZ

Respondents contend that any relief on the petition should be limited to an individualized custody determination, i.e. bond hearing, under § 1226(a), rather than immediate release. Dkt. No. 8 at 4. Petitioners seek immediate release, and an order that Respondents may not re-detain Petitioners without a pre-deprivation hearing and adequate notice. Dkt. No. 1 at 10.

Courts have widely determined that where a non-citizen's arrest and detention are "blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediately release him and enjoin the Government from further similar transgressions." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019); *see also Rojas v. Almodovar*, No. 25-cv-7189, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)); *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (holding that where an individual's detention is unlawful from its inception, "a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation," as "the detention without adequate pre-deprivation procedures has already been carried out"). Here, because the violation of Ordonez's due process rights preceded, as opposed to followed, his re-detention, the Court agrees that the only appropriate remedy is immediate release. *See Khabazha*, 2025 WL 3281514, at *8 ("It follows that Khabazha is entitled to release from the unlawful restrictions on his liberty — which means, in the circumstances here, restoration of the conditions of his release prior to his re-detention on June 23, 2025."). Petitioner's request for an order that Respondents may not re-detain Ordonez without a pre-deprivation hearing and adequate notice is denied, because, as previously explained, that is not what is required of due process.

## VI.    CONCLUSION

For these reasons, it is

**ORDERED** that the Petition is **GRANTED in part** and **DENIED in part**, and it is further

**ORDERED** that Petitioner Ordonez's request for habeas relief pursuant to 28 U.S.C. § 2241 is **GRANTED in part**, and it is further

**ORDERED** that Petitioner Ordonez be immediately released from immigration custody by August 7, 2026 at 5 p.m., and it is further

**ORDERED** that Petitioner Pineda's request for habeas relief pursuant to 28 U.S.C. § 2241 is **DENIED**, and it is further

**ORDERED** that Petitioners' request to award counsel fees and costs under the Equal Access to Justice Act (EAJA) is **DENIED without prejudice** as premature.  Counsel for Petitioners may apply for EAJA fees within 30 days after the 60-day appeal period has expired, *see Barbour v. Colvin,* No. 12-cv-00548, 2013 WL 7206218, at *1 (E.D.N.Y. Aug. 1, 2013), and it is further

**ORDERED** that the Clerk enter judgment accordingly and close this action.

   **IT IS SO ORDERED.**

Dated: August 6, 2026

Elizabeth C. Coombe
U.S. District Judge